432 A.2d 196

**In re D. L. R.**

**Appeal of F. O. R.**

Supreme Court of Pennsylvania.

Submitted March 5, 1981.

Decided July 16, 1981.

John E. Cooper, Erie, for appellant.

James E. Beveridge, Erie, for Children's Services.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The Orphans' Court entered a decree terminating appellant's parental rights in her child. Appellant contends that the evidence was insufficient to support the decree. After carefully reviewing the record, we find appellant's contention to be without merit. Appellant's continued incapacity has caused her child to be without essential parental care and such incapacity cannot or will not be remedied. *See In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978), *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 192 (1978); 1 P.S. § 311(2). The determination of the Orphans' Court is supported by competent evidence and will not be reversed. *See In re J. L. Z.*, 7 Pa. 492, 421 A.2d 1064 (1980).

Decree affirmed. Each party to pay own costs.

NIX, J., filed a dissenting opinion.

NIX, Justice, dissenting.

Today, the majority of this Court has forged beyond the fundamental tenets of American jurisprudence by approving the order of the Orphans' Court of Erie County which involuntarily terminated the parental rights of the mother, F. O. R., because of her mental retardation. Neither law,

reason, societal interests nor compassion can justify such a heartless and hubristic decision.

Appellant, F. O. R. is the mother of D. L. R., age six. The fact of F. O. R.'s mental incapacity of retardation is not disputed. The fact that her retardation is an act of God rather than the fault of F. O. R. is unquestioned. The fact that F. O. R. sincerely loved her child, visited the child on a consistent monthly basis, and gave D. L. R. the best care she could under the circumstances during home visits is undisputed. The issue of custody is not involved in this action. The Court has properly determined the mother should not be permitted to have the custody of the child.

The case presents a single issue: may mental incapacity justify a permanent, involuntary termination of parental rights. Restated, does the Adoption Act of 1970, P.L. 620, § 311(2), 1 P.S. § 311(2) [1] authorize the involuntary termination of a mother's rights *solely* on the grounds of mental retardation.

My concern, stated in *In re William L.*, 477 Pa. 322, 366, 383 A.2d 1228, 1247 (1978) (Nix, J., concurring and dissenting), unfortunately has become a reality:

The construction placed upon section 311(2) by the majority results in the creation of two categories of parents; one consisting of involuntarily incapacitated parents, either physically, mentally, or both, and the other consisting of basically healthy parents. As to those parents in the former category, the majority would apply section 311(2) to terminate their parental rights, whereas those parents in the latter category would not face such a threat with-

---

1. The statute provides, in pertinent part:
     § 311. Grounds for involuntary termination
       The rights of a parent in regard to a child may be terminated . . . on the ground that:
                   *    *    *    *    *    *
       (2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent; . . . .

out some dereliction on their part. By this judgment they have ordained that the bedridden terminally ill cancer patient, the comatose accident victim, the paralytic, and the contagiously ill patent are all prime subjects for involuntary termination under this section. [Footnote omitted.]

The interpretation articulated today vests within the state a power far beyond even the broadest concept of *parens patriae* and subjects the Act to obvious constitutional objections in that a constitutionally provided right to equal protection of the law is abridged.

While I do not question the state's power to sever the parent-child relationship through the enactment of section 311, that power is predicated upon the reasonable exercise of the doctrine of *parens patriae.* Even criticism of the doctrine in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) [2] did not anticipate a state would attribute finality to a present mental condition and use that "judicial prognosis" as the ground for involuntary termination of parental rights. This is a clear abuse of the *parens patriae* power and it was never dreamed that this power would be used to involuntarily terminate a mother's right to her child based solely on her mental limitations.

Rather than using its *parens patriae* power to be a kindly guardian of mother and child, both suffering from disabilities (one by virtue of age, the other by virtue of mental retardation), here, the majority attempts to usurp the authority existing only in a deity.

A mentally retarded person who clearly loves her child and has manifested that love in every manner possible given her incapacity has become a subject for involuntary termination under the majority's reading of section 311(2) of the Adoption Act.

I dissent.

**2.** "The Latin phrase proved to be great help to those who sought to rationalize the exclusion of juveniles from the constitutional scheme; but its meaning is murky and its historic credentials of dubious relevance." *In re Gault,* 387 U.S. 1, 16, 87 S.Ct. 1428, 1437, 18 L.Ed.2d 527 (1967).