448 A.2d 59

**In re Interest of C. M. E., a minor.**

**Appeal of R. J. B.**

Superior Court of Pennsylvania.

Argued March 15, 1982.

Filed July 9, 1982.

Petition for Allowance of Appeal Denied Oct. 12, 1982.

580

David M. Axinn, Franklin, for appellant.

Joseph E. Altomare, Tionesta, for appellee.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

Appellant R. J. B., the natural mother of C. M. E., appeals from the order terminating her parental rights in her child C. M. E. following a consolidated hearing on the petition for involuntary termination filed by Forest County Department of Youth and Children's Services (FCCS) and Appellant's Habeas Corpus petition.[1] Because of our determination that follows, we reverse the termination of Appellant's parental rights.

C. M. E. was born in April of 1974 and resided with Appellant in Venango County until April of 1980, at which time their residence was changed to Forest County. Between April of 1976 and February of 1980, C. M. E. was admitted to the hospital on nineteen occasions for sundry

[1]. The rights of C. M. E.'s natural father, M. E., who is no longer married to Appellant, were terminated at the same hearing and are not a part of this appeal.

illnesses and injuries, as well as for scabies, burns, animal bites and ingestion of, inter alia, Librium.[2]

While residing in Forest County, Appellant arranged for a babysitter to care for C. M. E. overnight on May 1, 1980 while she and her companion took an automobile to be inspected in a different county. Appellant told the sitter that she would return the following evening. On May 5, 1980, the sitter contacted FCCS, as Appellant had not returned home, nor provided her with sufficient food or clothing for the child. FCCS caseworkers took food to the babysitter and found the child to be without proper clothing and in poor health. Upon the discovery of the child's need for additional clothing, the caseworkers entered Appellant's apartment. There they found an eviction notice and the apartment unlocked. The babysitter informed the caseworkers that the landlord had left the apartment open to allow Appellant's dogs to have access to the outside. Large amounts of dog feces were present in the apartment and on the steps leading to the apartment. The caseworkers determined that the apartment was so unsanitary as to pose a health hazard to the child.

The caseworkers contacted the Sheriff's Department and took custody of C. M. E. Upon Appellant's return, she stated that the car had needed unforeseen repairs and that she did not have access to a telephone to contact the sitter concerning her delay. A shelter hearing was held on May 7, and on May 8 Appellant signed a consent decree giving FCCS custody of C. M. E. He was then placed in a foster home in Forest County and given immediate medical treatment for scabies.

FCCS then drafted a parenting plan on May 19, 1980 which Appellant was to follow in order to remedy the problems encountered by the caseworkers, for the return of the child. This six month plan included locating adequate

2. We note that despite the number of hospital admissions, neither doctor who testified would conclude that the number or nature of the admissions indicated anything out of the ordinary. However, we do note that one of the doctors did contact Children's Services with regard to C. M. E.

and safe housing, nutrition counseling, and parenting education. Appellant attended regularly all of the various classes, including mental health counseling for both Appellant and her husband. However, counseling was determined to be unproductive, because Appellant failed to communicate verbally in many cases and failed to actively participate in the programs, despite her attendance. The parenting classes ended after five months, as the counselor felt no progress was being made.

In the meantime, Appellant and her present husband moved to Venango County in July of 1980. Their new residence was again determined to be substandard and the parties moved, again, to a substandard dwelling. Upon the next move, Appellant's current address, the dwelling was determined to be satisfactory if certain improvements were made.

Appellant was allowed visitation with C. M. E. during this period after his placement in the foster home and Appellant took advantage of this visitation, often taking gifts to the child. Also, Appellant did request the return of C. M. E. on numerous occasions.

After Appellant's relocation to Venango County, a problem arose concerning the providing of services. The Venango County agencies believed that they could not provide support services to Appellant, as set out by FCCS in May of 1980, because the child involved was not residing in Venango County. However, Appellant did attend certain mental health classes and two home evaluations were made by agencies in Venango County after Appellant's relocation. Appellant had been told by a FCCS caseworker that Appellant would be responsible for contacting the Venango County agencies for continued supportive services after July of 1980.

Appellant was psychologically evaluated in the fall of 1980 and a finding made of borderline intellectual functioning, with minimal verbalization ability. She was found to be functioning in the normal range in non-verbal skills and had no neurological impairment. Appellant has completed ten grades of special education.

C. M. E. was psychologically evaluated in February of 1981 as mildly retarded, being one to one and one-half years behind the school ability of his age group with similar measured intelligence. He also was found to be suffering from hyperactivity.

It was determined by the lower court that both are in need of continued on-going educational and supportive services through public health visits, educational programs and medical attention. Also, it was determined by the testifying psychologist, Christopher F. Groff, that an intensive educational program for a period of two to two and one-half years would be necessary to equip Appellant with the parenting skills necessary to advance the child's development if Appellant and child were reunited, and that intervention was necessary to either maintain or improve C. M. E.'s level of development.

A joint conference, including FCCS and the Venango County agencies, and involving a review of the six month plan, was held in November of 1980, upon the expiration of the time schedule. Upon a review of the information, it was determined that little, if any, progress had been made in improving Appellant's parenting skills.

It is undisputed that both Appellant and her husband are unemployed and receiving welfare.

Appellant filed a petition for habeas corpus on February 17, 1981 and FCCS filed a petition for involuntary termination of parental rights on March 5, 1981. The grounds alleged by FCCS involved 23 P.S. § 2511(a)(2) and (a)(5) which state:

### § 2511. Grounds for Involuntary Termination

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

.    .    .    .    .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence

necessary for his physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

After a hearing on May 6, 1981 and the filing and dismissing of exceptions following the court's order terminating Appellant's parental rights, this appeal was filed.

Appellant alleges that termination was not justified under either 23 Pa.C.S.A. § 2511(a)(2) or (a)(5), and that continued foster placement is not necessary, nor in the best interests of the child.

The opinion of the lower court makes several determinations concerning the issues involved, after making thirty-six findings of fact. The lower court determined that (1) Appellant failed to successfully complete the parenting program to the degree where the child's welfare would not be placed in jeopardy if he was returned to Appellant without on-going supportive services, (2) the medical observations, as discussed supra, support the finding that Appellant cannot perform proper parental duties and care without institutional support, (3) that although there is no evidence indicating that Appellant is unable to care for herself, continuous agency and institutional support on an intense basis is necessary for Appellant to meet the child's on-going demands, and (4) that the statute does not require providing such daily and intensive services to Appellant, as opposed to the termination of her parental rights. The lower court

determined that the mere *possibility* of rehabilitating Appellant's parenting skills within a maximum period of two and one-half years did not preclude the termination of parental rights on these facts. The court then stated that:

Our last analysis of the entire record and determining in our decision is "the services of assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child." [1] In our view Petitioner would virtually be compelled to live with Respondent to protect this child over an extended period of time without any confidence the mother would be able to correct her own shortcomings and rise to the level of a competent parent. The Act does not require this of Petitioner. [Footnote omitted.]

On July 9, 1981, an order was issued denying Appellant's writ of habeas corpus, terminating Appellant's parental rights, and placing the child in custody of FCCS for adoption.[3] A final decree was made on July 15, 1981.

■ Our scope of review is limited to a determination of whether the orphans' court's decree terminating parental rights is supported by competent evidence.[4] *In re Adoption of B. D. S.*, 494 Pa. 171, 431 A.2d 203 (1981); *In re D. K. W.*, 490 Pa. 134, 415 A.2d 69 (1980). However, the lower court's inferences, deductions and conclusions are subject to review. *In re Adoption of J. A. B.*, 487 Pa. 79, 408 A.2d 1363 (1979).

■ Because of the importance placed on the family, the Commonwealth may disrupt the parent-child relationship only upon a clear showing of necessity; moreover, even if

3. A later order terminated the parental rights of C. M. E.'s natural father, M. E.

4. We are mindful of the recent U. S. Supreme Court opinion in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) holding that termination of parental rights requires, at a minimum, clear and convincing evidence. However, because of our determination in the instant case, we need not discuss the applicability of the holding in *Santosky* at this time.

removal is necessary to protect the child, every effort should be made to reunite the family. *In re Adoption of R. I.*, 468 Pa. 287, 361 A.2d 294 (1976), *appeal dismissed, U.S. cert. denied*, 429 U.S. 1032, 97 S.Ct. 722, 50 L.Ed.2d 743 (1977).

■ All circumstances must be considered when analyzing a parent's performance of parental obligations in a proceeding for termination of parental rights; the parent's performance must be measured in light of what would be expected of an individual in circumstances which the parent under examination finds herself. *In re Adoption of B. D. S., supra.*

■ It is clear that termination of parental rights cannot be justified merely by demonstrating that the home is "submarginal" and likely to result in "cultural deprivation". *In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978), *U.S. cert. denied sub nom., Lehman v. Lycoming County Children's Services, et al.*, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978).

■ Three things must be proven before a natural parent's rights in a child will be terminated under section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975).

The record contains sufficient evidence of the repeated and continued incapacity of Appellant in terms of her parenting skills. The testimony of the caseworkers and the psychologists, supra, indicates her deficiencies in caring for the child. The evidence also reveals that Appellant's incapacity has caused the child to be without essential parental care, control and subsistence, for the child has been voluntarily placed in a foster home. However, we disagree with the lower court concerning the third requirement, namely, that the causes of the incapacity cannot or will not be remedied.

■ A parent, whose child has been placed in foster care, has an affirmative duty to work towards the return of the child, but even if there has been a long separation occasioned by parental neglect or incapacity, termination of parental rights cannot be ordered if there is a reasonable possibility that the causes and conditions which have led to the separation can be remedied and the family restored. *In re William L., supra.*

The lower court concluded, inter alia, that the possibility of rehabilitation of Appellant in a maximum period of two to two and one-half years was not a reasonable amount of time. We disagree. We refuse to punish a parent for her lack of parenting skills which is based, at least in part, on her limited intellectual abilities, especially when the evidence leads to the conclusion that she may be able to reach a satisfactory level of parenting skill with the aid of programs available to her. *See In re D. L. R.*, 495 Pa. 55, 57, 432 A.2d 196, 197 (1981) (NIX, J., dissenting).

■ It must be kept in mind that a parent's IQ score is only one factor among many to be considered in determining whether she has the capacity to meet the essential needs of her children. *In re William L., supra.*

■ In the instant case, only one half-hearted attempt was made to remedy Appellant's parenting deficiencies. The six month plan lasted only five months, due in part to the difficulties in dealing with Appellant's non-verbal character, but also because of Appellant's change of residence from Forest to Venango Counties. The demand on Appellant to seek assistance in Venango County by herself is insufficient proof, in this case, that Appellant's incapacity cannot or will not be remedied. We will not terminate the interests of a parent in her child where efforts by the parent to secure support services may have been thwarted by the complexities of the jurisdiction of the state welfare agencies.[5] Without an opportunity to receive the *full* benefit of

5. We need not decide which county should provide its services to Appellant.

the plan devised for the education and possible return of the child to Appellant, her parental rights must take precedence. This is not to say that termination of parental rights may never be permitted in this or any other similar factual situation, but where programs do exist for the education of parents, and these programs present a viable alternative with a reasonable chance of success, termination of parental rights should be permitted only in the most drastic of situations. The language of 23 Pa.C.S.A. § 2511(a)(2): "cannot or will not," requires more proof than has been offered here.

■ Because we find the evidence lacking as to section 2511(a)(2), then it must also follow that section 2511(a)(5) has also failed, for it contains, in part, the same language:

> (5) ... the parent cannot or will not remedy those conditions within a reasonable period of time...."

We have determined previously in this opinion that two to two and one-half years is, in fact, a reasonable period of time under the instant facts. Therefore, 23 Pa.C.S.A. § 2511(a)(5) has not been proved.

Three alternatives were available to the lower court in the instant case: (1) return the child to Appellant, i.e., grant the habeas corpus petition and deny the involuntary termination petition; (2) retain the status quo, i.e., deny both petitions; or (3) terminate Appellant's parental rights, as the lower court has done.

We do not believe that the instant facts warrant a return of the child to Appellant. However, we do not find the evidence to have been sufficient to terminate Appellant's parental rights. Therefore, we believe that the second alternative is the proper one.

The Order of the lower court terminating Appellant's parental rights is reversed; the Order, as it relates to Appellant's habeas corpus petition and custody of C. M. E. is affirmed.

HOFFMAN, J., dissents.