332 Pa. Superior Ct. 486 (1984)
481 A.2d 892
In re ADOPTION OF JAMES J.
Appeal of JAMES P., Respondent Natural Father Children and Youth Services.
JAMES P.
v.
CHILDREN AND YOUTH SERVICES OF DELAWARE COUNTY.
Supreme Court of Pennsylvania.
Argued February 11, 1983.
Filed August 24, 1984.
*488 Carl Oxholm, III, Haverford, for appellant.
Alfred J. Mattei, Assistant County city solicitor, Media, for appellee (at No. 2793) and for participating party (at No. 2776).
Before CERCONE, President Judge, and CAVANAUGH, WIEAND, CIRILLO, POPOVICH, MONTGOMERY and HOFFMAN, JJ.
CAVANAUGH, Judge:
Appellant, James P., raises four issues in his appeal, two of which will be addressed herein.[1] First, appellant asks us to define the scope of appellate review in termination of *489 parental rights cases in this Commonwealth, and derivatively, to consider whether the recent U.S. Supreme Court case of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), mandates that our scope of review be broader than an abuse of discretion. Secondly, the appellant contends that the lower court erred in finding that appellee sustained the evidentiary burden of clear and convincing in its order that appellant's parental rights be terminated.
James J. was born out of wedlock on December 19, 1979 to Marie J. and appellant, James P. Marie J. was involuntarily committed to Haverford State Hospital on December 31, 1979. Consequently, James J. was placed in the custody of Children and Youth Services of Delaware County (hereinafter CYS), appellee herein. On December 15, 1980, Marie J.'s parental rights were involuntarily terminated pursuant to § 311(2) of the Pennsylvania Adoption Act of 1970.[2]
CYS filed a petition to terminate appellant's parental rights on January 23, 1981. The petition was grounded on §§ 2511(a)(2) and 2511(a)(5), of the Adoption Act of 1980.[3] A hearing was held on May 18, 1981 and on July 6, 1981, the court ordered that appellant's parental rights be terminated. Appellant's exceptions were dismissed on October 9, 1981. Appellant's petition requesting visitation pending appeal of the termination order to the Superior Court was denied on September 28, 1981 in a separate proceeding. The case was heard on appeal by a three member panel of this court and subsequently certified to the court en banc for reargument.

I
The first issue raised on appeal is whether the scope of review in cases involving the termination of parental rights should be broader than abuse of discretion.
*490 Appellant argues that the scope of review in termination cases is unclear. We disagree. Although there has been some uncertainty in case law emanating from our courts in our discussions of what "broad scope of review," means in custody cases,[4] our Supreme Court has been consistent and clear in defining scope of review in termination of parental rights cases.
On appeal, an appellate court is limited to determining whether the trial court's termination of appellant's parental rights is supported by competent evidence. In re M.L.O., 490 Pa. 237, 241, 416 A.2d 88, 90 (1980); In re Adoption of Baby Boy P., 479 Pa. 138, 141, 387 A.2d 873, 874 (1978); In re William L., 477 Pa. 322, 340, 383 A.2d 1228, 1237, cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978); In re Adoption of M.T.T., 467 Pa. 88, 91, 354 A.2d 564, 566 (1976); In re Adoption of Farabelli, 460 Pa. 423, 427, 333 A.2d 846, 848 (1975); Sheaffer Appeal, 452 Pa. 165, 169, 305 A.2d 36, 39 (1973). Moreover, unless that court abused its discretion or committed an error of law, such findings are entitled to the same weight given a jury verdict. Matter of Adoption of Gene Tuney Mullen, 321 Pa.Super. 496, 468 A.2d 1098 (1983). Matter of Adoption of J.S.H., 299 Pa.Super. 90, 92-93, 445 A.2d 162, 163 (1982); In re Adoption of J.S.M., Jr., 492 Pa. 313, 316, 424 A.2d 878, 879 (1981); In re M.L.H., 490 Pa. 54, 57, 415 A.2d 29, 30 (1980); In re D.K.W., 490 Pa. 134, 138, 415 A.2d 69, 71 (1980); In re D.J.Y., 487 Pa. 125, 130, 408 A.2d 1387, 1389 (1979); Adoption of R.H., 485 Pa. 157, 162, 401 A.2d 341, 344 (1979); In re William L., supra.
Of course, since the Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), decision, the "competent evidence" standard has been replaced with a clear and *491 convincing standard.[5] However, there is no indication from case law subsequent to the Santosky v. Kramer decision or in Santosky itself, that the abuse of discretion or error of law standard is in any way affected thereby.
Insofar as termination cases are concerned, intimations of broad appellate review or broad scope of review should properly relate to the appellate court's duty to ensure that the trial court has satisfactorily fulfilled the requirements of examining all evidentiary resources, conducting a full hearing and setting forth its decision in a full discursive opinion. While, unlike custody cases, the termination cases have not repeatedly verbalized the requirement of comprehensiveness, it is clear from a reading of the cases that the requirement is engrafted on the law. Accord, In re Adoption of J.S.M., Jr., 492 Pa. 313, 424 A.2d 878; In re D.J.Y., 487 Pa. 125, 408 A.2d 1387 (1979); In Interest of C.M.E., 301 Pa.Super. 579, 448 A.2d 59 (1982).
Nevertheless, a broad or searching review does not vest in the reviewing court either the duty or the privilege of making its own independent determination of fact, nor does it preclude an appellate court from using abuse of discretion as the appropriate standard of review. The purpose of employing broad and searching review is for the protection of the parties in ensuring that the inquiry of the lower court is complete and that its decision was made in accordance with the due process clause of the Fourteenth Amendment in protecting the fundamental liberty interest of natural parents in their child. The purpose of employing the abuse of discretion standard of review, on the other hand, is to accord the trier of fact the appropriate deference as he has had the opportunity to observe the witnesses and *492 evaluate their testimony, and by reason of his position is presumed to be practised and skilled in this responsibility.
The reason for insistence on a full hearing, a developed record, and an adjudication which demonstrates that appropriate consideration was given to the relevant factors is clear. Termination cases represent a delicate tension between two of our society's most fundamental precepts: the right of a parent to exercise the rights and obligations of a parent toward his child, free from governmental intrusion, and society's interest in the nuturing, care, safety and training of children. Therefore, it is necessary that the lower court be of an inquiring mind and insist that the full story be told, and that its opinion demonstrate that the evidence has been weighed in consideration of the statutory requirements and the applicable standard of proof.
Appellant argues that after Santosky v. Kramer, supra, due process mandates a searching appellate review in cases involving the termination of parental rights. As previously discussed, we do not believe that a searching review precludes application of abuse of discretion as the appropriate appellate standard.
The Santosky decision does not discuss the appropriate scope or standard of appellate review in a termination case; it discusses the burden of proof which must be borne by the party wishing to terminate parental rights. In Santosky, the U.S. Supreme Court made clear that the standard of proof which must be applied in a termination proceeding is either clear and convincing or beyond a reasonable doubt. That is, the Santosky decision disapproved of the use of preponderance of the evidence as the burden of proof in a termination proceeding. In order to ensure a party that his due process rights will be protected, appellant urges this court to adopt a broader standard of review than abuse of discretion to guarantee that the trial court in fact complied with the requirement in law of clear and convincing evidence. However, Santosky does not ask or answer the question of whether the abuse of discretion standard now used by this court fairly allocates the risk of affirming an *493 erroneous decision between the Commonwealth and the natural parent; it does ask "whether a preponderance standard fairly allocates the risk of an erroneous factfinding between these two parties." 455 U.S. at 761, 102 S.Ct. at 1398 (emphasis added).
Santosky mandates an upgrading of the burden of proof necessary for a party to succeed in a termination proceeding from preponderance to clear and convincing. By so doing, the due process rights of appellant are adequately protected. The heightened burden of proof encumbers the fact finding process with a protective standard designed to preserve basic parental rights. It is enough that appellate review is co-ordinately broadened, i.e., the appellate court must conclude that the trial court's discretion was exercised on clear and convincing evidence. There is nothing in Santosky or in the development of Pennsylvania law which should cause us to adopt a new scope of review.
The clear and convincing standard imposes a heavy burden of proof upon the proponent of termination. It requires that the existence of disputed facts be "highly probable, that is, much more probable than [their] non-existence." Sanders, Anatomy of Proof in Civil Actions, 28 Pa.L.Rev. 297, 304 (1968); see also McBaine, Burden of Proof: Degrees of Belief, 32 Calif.L.Rev. 242, 253-254 (1944). In Pennsylvania, courts applying this standard have required that the testimony be "so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue." In re Jackson, 267 Pa.Super. 428, 431, 406 A.2d 1116, 1118 (1979) (citation omitted).
The risk that the Santosky court considered most important was the risk that the factfinding function of a trial court using a preponderance of the evidence standard would deprive the parties of a fundamentally fair decision. By elevating the burden of proof from a standard of preponderance of the evidence to clear and convincing evidence, the probability that "numerous factors [that] combine to magnify the risk of erroneous factfinding" at the trial level is *494 thereby lessened. Santosky, 455 U.S. at 762, 102 S.Ct. at 1398.
For the aforementioned reasons, and notwithstanding the Santosky opinion, we agree that abuse of discretion is the proper standard of review and most importantly that it best upholds due process concerns and serves the interests of the parties in a termination of parental rights case. We do not believe that Santosky has any effect on the existing standard of review or that by broadening the standard of review, parent's fundamental rights with respect to their children will be better protected. Therefore, we reject appellant's contention that the holding in Santosky mandates a broader scope of review than abuse of discretion.
In summation, an appellate court will not reverse an order for termination of parental rights unless it is apparent that the trial court abused its discretion, committed an error of law, or lacked evidentiary support for its findings.

II
Appellant's next argument is that the appellee failed to show, by clear and convincing evidence, those grounds necessary for termination of parental rights under either 23 Pa.C.S. § 2511(a)(2) or (5), which sections appellee relies upon. We agree.
Section 2511 in pertinent part provides that termination of parental rights is appropriate where the moving party shows:
§ 2511 . . .
(a) . . .
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
.....

*495 or
.....
(5) The child had been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
In order to meet the clear and convincing burden of proof appellee must instill in the mind of the court a firm belief or conviction. In describing this burden our Supreme Court has said:
The witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitance, of the truth of the precise facts in issue . . . It is not necessary that the evidence be uncontradicted. . ., provided it carries a clear conviction to the mind . . . or carries a clear conviction of its truth. . .
La Rocca Trust, 411 Pa. 633, 640, 192 A.2d 409, 413 (1963).
The court below, applied the correct burden of proof and found that the clear and convincing standard was met by appellee within the LaRocca standard.[6]
Appellant's contention is to the contrary. Specifically, appellant argues that parental incapacity was not shown by competent or clear and convincing evidence under *496 § 2511(a)(2), which requires repeated, continued and irremediable incapacity of the parent, nor was it shown under § 2511(a)(5), which requires that the parent has failed to remedy conditions which initially occasioned the removal from parental care.
We begin our discussion of whether or not the appellee met its burden of proof by considering In re Geiger, 459 Pa. 636, 331 A.2d 172 (1975).
The Geiger court set forth the following requirements:
. . . three things must be proved before a natural parent's rights to a child will be terminated under section [2511(a)(2) and (5)]: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will be remedied.
In re Geiger, 459 Pa. 636, 639, 331 A.2d 172, 173-74 (1975).
In this case, appellee's allegation of appellant's repeated and continued incapacity in advocating termination pursuant to § 2511(a)(2) is unsupported by the record and, therefore, cannot satisfy a clear and convincing standard. CYS proffered the testimony of a Haverford State Mental Hospital employee who stated that appellant had been admitted on three occasions (one and one-half months, four days, one day) over a period of fifteen months with the last admission occurring approximately a year before the termination hearing in the lower court. In addition, the state caseworker testified that more than a year before the termination hearing, appellant was confused as to his paternity regarding James J.
The testimony of these witnesses did not provide the court with any information as to the reasons for the admissions, the diagnoses, the treatment rendered, appellant's condition or prognoses upon discharge.
Appellant moved to dismiss for failure to state a cause of action pursuant to 23 Pa.C.S. § 2511 after CYS presented *497 its case. The motion was denied. Consequently, appellant called his psychiatrist, Dr. Herman Boerner, to testify in his behalf.
Dr. Boerner testified that he had been treating appellant, on an out-patient basis, for about two years at the time of the hearing. He stated that although appellant had been diagnosed as chronic schizophrenic, his disorder was well in hand and seemed to be well controlled for at least the past six months during which appellant had been taking the prescribed "very moderate" dose of medication. He further testified that appellant's future ability to function satisfactorily was contingent upon his responsible attitude toward taking his medication. Dr. Boerner's expert opinion was that appellant's disorder could go into remission. After reviewing all of the testimony, we conclude that the termination of appellant's parental rights pursuant to § 2511(a)(2) and In re Geiger, was not justified, as there is insufficient evidence showing appellant's repeated and continued incapacity that cannot or will not be remedied by him. Therefore, the burden of proof was not met.
Further, the evidence advanced at the termination hearing in regard to § 2511(a)(5) was conflicting. The state caseworker testified that he had arranged meetings and visitations with Mr. P. so that he could see James J. He stated that "Mr. P. rarely held his child, rarely asked to hold him, held him for short periods of time at my urging. His handling of the child was unwieldly." In addition he said:
During my first visit with Mr. P., Mrs. J. and the child on February 4, 1980, James P. held the child briefly at the request of Mrs. J. When he took the child, Mrs. J. told him to support the child by the neck, at which point, Mr. P. held the child or put his hands around the baby's neck, to which Mrs. J. said, Well don't choke him. Mr. P. responded to that with a smile and saying, don't give me any ideas.
The caseworker also testified that appellant had denied him permission to come to his house on three occasions and *498 that appellant engaged in "teasing activity" with James J. The caseworker further stated that he had difficulty maintaining a relationship with appellant due to appellant's hostility.
The lower court opinion did not specify any of appellant's testimony in support of his contention; it merely concluded that notwithstanding the conflicting testimony, the clear and convincing burden of proof was met under LaRocca Trust, supra.
We disagree. Present in the record are the following undisputed facts which we feel demonstrate that appellee did not meet the clear and convincing burden of proof pursuant to § 2511(a)(5). Appellant had steadily increased the number of visits with James J. over the sixteen month period before the hearing. James said that he did not take a more active role before the termination of Marie J.'s parental rights (five and one-half months before the hearing) because he did not want to interfere with the natural mother's nurturing responsibilities. James said that he "did not wish to usurp Marie J.'s rights and get involved in any predicament in that way; and number two, I had no way of taking care of the child on my own." Appellant said that, "I liked holding the child. I have had no previous experience with children, but I enjoyed holding the child and it felt good. I was a little bit awkward, I think, but I tried to do my best."
He further stated that "I feel affectionate for the child and I feel like I would like to regain the visits and work toward achieving custody." In assessing his life since August, 1980, appellant said,
[t]hings look better for me now. . . . Things are coming together professionally, my music, I have hooked up with management, I am getting jobs, and things look good in that respect. And emotionally, I have been on an even keel and have had no incidents or problems. I have been taking my medicines and  and following the therapy of Dr. Boerner and working towards making myself successful *499 at what I am doing, and trying to make forward progress in my life.
At the hearing date, appellant had maintained himself on his medication for nine months, was working at his job longer hours and with regularity, and had made arrangements for child care during his working hours. This evidences a significant effort by appellant to change his lifestyle after termination of the mother's parental rights. It is clear from examination of the record below that appellant attempted to get increased visitation and clearly demonstrated a desire to learn how to effectively parent and eventually assume the responsibility for the welfare of the child, albeit not exclusively with the help of the agency. It is not mandated by the statute that all of a parent's efforts to remedy his parenting problems must necessarily be made in cooperation with the agency or through the agency. It is obvious by examining the record that the caseworker and appellant had a poor relationship and the mere fact that appellant chose to clear some of the barriers in the way of the restoration of his legal parenthood in ways other than through the agency should not be held against him.
A parent's ability to parent must be assessed with reference to his condition at the time of the hearing, not with reference to his past condition. In re Howard, 468 Pa. 71, 360 A.2d 184 (1976). "A parent's effort in maintaining a relationship with a child must always be evaluated in light of the obstacles confronting that parent." In re Adoption of J.S.M., Jr., 492 Pa. 313, 317, 424 A.2d 878, 880 (1981).
In addition, this court has said:
Because of the importance placed on the family, the Commonwealth may disrupt the parent-child relationship only upon a clear showing of necessity; moreover, even if removal is necessary to protect the child, every effort should be made to reunite the family. In re Adoption of R.I., 468 Pa. 287, 361 A.2d 294 (1976), appeal dismissed, U.S. cert. denied, 429 U.S. 1032 [97 S.Ct. 722, 50 L.Ed.2d 743] (1977). All circumstances must be considered when analyzing a parent's performance of parental obligations *500 in a proceeding for termination of parental rights; the parent's performance must be measured in light of what would be expected of an individual in circumstances which the parent under examination finds herself. In re Adoption of B.D.S., [494 Pa. 171, 431 A.2d 203 (1982)].
In Interest of C.M.E., 301 Pa.Super. 579, 586-87, 448 A.2d 59, 63 (1982).
The Supreme Court in Santosky stated that termination should, in essence, be a last resort. "[W]hile there is still reason to believe that positive, nurturing parent-child relations exist, the parents partriae interest favors preservation, not severance, of natural familial bonds." 455 U.S. at 766-67, 102 S.Ct. at 1401 (footnote omitted). We find that the record below contains more than ample evidence to provide reason to believe that positive, nurturing, parent-child relations exist between appellant and James J.
In a recent case, our own Supreme Court reversed a termination order which was based largely on the fact that the mother had a low I.Q. The court said:
The lower court concluded, inter alia, that the possibility of rehabilitation of Appellant in a maximum period of two to two and one-half years was not a reasonable amount of time. We disagree. We refuse to punish a parent for her lack of parenting skills which is based, at least in part, on her limited intellectual abilities, especially when the evidence leads to the conclusion that she may be able to reach a satisfactory level of parenting skill with the aid of programs available to her. See In re D.L.R., 495 Pa. 55, 57, 432 A.2d 196, 197 (1981) (NIX, J., dissenting).
In Interest of C.M.E., 301 Pa.Super. 579, 588, 448 A.2d 59, 63-64.
We conclude that the evidence is insufficient to reach the "subjective certainty" about the factual conclusions required by due process to find that the clear and convincing evidentiary burden was met by appellee and consequently, that appellant's parental rights should be terminated. Santosky, 455 U.S. at 769, 102 S.Ct. at 1402.
*501 Appellant has demonstrated through his acts as well as his words that he loves his child and desires to learn how to be a good parent. In consideration of all of the evidence, the appellee failed to show by clear and convincing evidence that appellant's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(2), or 2511(a)(5). Therefore, we conclude that the lower court lacked the requisite evidentiary support for its finding that appellant lacks the capacity to provide the essential care and subsistence and that such incapacity is irremediable. Consequently, we reverse.
CERCONE, President Judge, files concurring and dissenting opinion.
CIRILLO, J., filed dissenting opinion.
HOFFMAN, J., filed concurring opinion.
POPOVICH, J., concurs in result.
HOFFMAN, Judge, concurring:
Although I agree with Judge Cavanaugh's conclusion, that the appellate standard of review in parental termination cases is whether the lower court has abused its discretion, and with his result, I write separately to clarify a misunderstanding shared by members of the bar and bench alike  the distinction between appellate scope of review and standard of review. Scope of review, as well-stated by Judge Cavanaugh, relates "to the appellate court's duty to ensure that the trial court has satisfactorily fulfilled the requirements of examining all evidentiary resources, conducting a full hearing and setting forth its decision in a full discursive opinion." (Opinion by CAVANAUGH, J. at 491). A broad scope of review, therefore, requires that the appellate court conduct a comprehensive review of the record formulated in and the decision formulated by, the lower court. In other words, in reviewing a termination of parental rights order, our Court must consider all of the evidence before the lower court as well as the lower court's findings of fact and conclusions of law. This does not mean, however, that we must employ an equally broad *502 standard of review. Standard of review refers to an appellate court's ability, or rather the limits on its ability, to modify or reverse the action taken by the lower court. An abuse of discretion standard, therefore, requires that unless upon a broad, comprehensive review of the entire record we find that the lower court has abused its discretion, we may not alter the lower court's decision. Accordingly, I take issue with Judge Cercone's assertion that a broad scope of review is necessarily incompatible with a more narrow standard of review.
I wish also to consider one further matter addressed by my colleagues. At first glance, it may appear that employing an abuse of discretion standard of review in parental termination cases is inconsistent with the broader standard of review employed in child custody cases. See In re Donna W. and Edward W., 325 Pa.Superior Ct. 39, 472 A.2d 635 (1984). However, in termination decisions, unlike custody cases, the trial court is guided by certain benchmarks in formulating its decision. These guidelines provide inherent protection that, coupled with an abuse of discretion review by the appellate court, well ensures all litigants' rights. For instance, as a result of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the evidentiary burden of proof in termination cases is one of clear and convincing evidence, the highest burden imposed in civil cases. The trial court must therefore be well-convinced that this strict burden has been met before terminating a natural parent's rights. In contrast, although in custody cases the burden of proof is entirely dependent upon the parties to the dispute, namely, parent, third-party or state, the burden is never as stringent as the clear and convincing standard imposed in parental termination cases. See In re Custody of Hernandez, 249 Pa.Superior Ct. 274, 376 A.2d 648 (1977). In addition, the Adoption Act, 23 Pa.C.S.A. § 2301 et seq., Act of October 15, 1980, P.S. 934, No. 163, § 1, effective January 1, 1981, provides trial judges with a compulsory structure through which a termination decision must be made. See, e.g., 23 Pa.C.S.A. § 2511 *503 (Grounds for involuntary termination). No such act exists in the child custody area to lend a similar consistency to trial court decisions.
I am therefore unpersuaded that the standard of review in custody and termination cases must be identical. The two categories of cases involve different parties, evidentiary burdens and judicial leeway. In acknowledging that our standard of review in termination cases has always been one of "competent evidence" or "abuse of discretion", we are not affording parents facing possible termination of their natural rights less protection than that afforded parents facing potential adverse custody orders. The "built-in" protections in termination proceedings ensure that end.
CERCONE, President Judge, concurring and dissenting:
I agree with the result reached by the majority but am not satisfied with the holding concerning the scope of review to be applied in termination cases. I find the discussion concerning scope of review confusing. The majority opinion speaks of a broad scope of review, as it relates to the termination of parental rights cases, but then concludes that an abuse of discretion standard is the proper one to be applied by an appellate court in deciding termination. I recognize the use of the term "abuse of discretion" as the standard applied in the precedential cases of our Supreme Court, but it seems that if we agree that a broad scope of review must be applied in order to determine if the lower court has erred we should not be afraid to say so.
Recently, in In Re: Donna W., 325 Pa.Superior Ct. 39, 472 A.2d 635 (1984) an en banc panel of our court held that a broad scope of review is to be applied by an appellate court in custody cases. Now, in a termination case, we are recommending the abuse of discretion standard. If a broad scope of review is proper in the custody matter, as it was in In Re: Donna W., how much more proper is it in termination where, unlike custody, the court's order is final? Both of these situations concern most serious family matters, and an appellate court's responsibility is as grave in the one as it is in the other.
*504 I can understand the majority's concern about the appellate court's exercise of an "independent determination of fact" in these cases. (Majority opinion at 491). I wish to make clear that in In Re: Donna W., where we set forth the standard for the broad scope of review in custody, we did not take it upon ourselves to allow an exercise of independent judgment by our court which would permit us to overturn a trial court's decision, absent some procedural or substantive error. Where the record demonstrates the trial court's decision as correct and precise in its findings of fact, conclusions of law and deductions and inferences properly drawn, then our court must affirm. So, too, in termination cases. However, we can only make such an assessment in both custody and termination after an exhaustively careful and detailed study of the entire record which can only be done by a standard of review broad enough to do so.
CIRILLO, Judge, dissenting:
Although I am in agreement with the majority's position as to the scope of appellate review in the termination of parental rights, I respectfully dissent from the finding that the requisite grounds for termination have not been established by clear and convincing evidence in the instant matter.
I share in the concern of the courts in insuring that termination be granted only as a last resort, since, by its nature, it is a procedure by which family life is irretrievably destroyed. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). But when there no longer exists a positive, nurturing, parent-child relationship, the legislature has mandated that the interests of the weaker party, the child, prevail. 23 Pa.C.S. § 2511(b). Under some circumstances termination is warranted. In re William L., 477 Pa. 322, 383 A.2d 1228 (1978). Accordingly, it becomes the obligation of the court to evaluate the parent-child relation, and, if necessary, to sever familial bonds so that the essential physical and emotional needs of the child are served. In the instant matter, the majority has not fulfilled this responsibility.
*505 Before the rights of the parents in their natural child may be severed completely and irrevocably, due process requires that the allegations be supported by clear and convincing evidence. Santosky v. Kramer, supra, "It is not necessary that the evidence be uncontradicted . . . provided it carries a clear conviction to the mind . . . or carries a clear conviction of its truth. . ." La Rocca Trust, 411 Pa. 633, 192 A.2d 409 (1963). In construing "parental duties," the courts have noted that a parent has an affirmative duty to meet the child's needs for love, protection, guidance and support. In Interest of T.S.L., 487 Pa. 245, 409 A.2d 332 (1979); In re Howard, 468 Pa. 71, 360 A.2d 184 (1976). Parenthood is not merely a biological status or a passive state of mind. In the Matter of the Adoption of Gene Tuney Mullen, 321 Pa.Super. 496, 468 A.2d 1098 (1983).
In the case at bar, the hearing court granted termination upon consideration of two sections of the Adoption Act, P.S. § 2511(a)(2) and (5), and did so in light of the clear and convincing evidence standard. Section 2511, in pertinent part, provides that termination of parental rights is appropriate where the moving party shows:
2511. . .
(a) . . .
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
. . . .
(5) The child had been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child with a reasonable *506 period of time and termination of the parental rights would best serve the needs and welfare of the child.
The record established that the appellant James P., natural father of James J., is diagnosed as chronically schizophrenic and manic depressive. He has a history of psychiatric hospital commitments and of drug abuse. Although he is currently taking medication and undergoing therapy to alleviate his disorder, it was revealed through the testimony of his psychiatrist that the appellant has a lax approach in maintaining his medical program. Failure on his part to take his medication has and will result in the surfacing of his mental illness.
Although the appellant expresses a desire to parent his child, the evidence is to the contrary. The appellant has never had custody of or provided support for his child. Nor had he visited the child during his first year of life, allegedly due to his intention to protect the rights of the mother and his doubts as to the child's paternity (specifically, the possibility that the mother had been artificially inseminated by either Jimmy Carter or a DuPont). In fact, visitation was not requested until the appellant received notice of the termination proceedings. All efforts by Children and Youth Services of Delaware County to assist the appellant in establishing a relationship with his child were met with open hostility, evidenced by the appellant's failure to keep appointments, his refusal to permit the caseworker to enter his home, and his threats and obscene manner in his contacts with the caseworker. The visits that did take place between the appellant and his child were devoid of any appropriate interaction. They were characterized by minimum and often negative physical contacts, by teasing on the part of the appellant and crying by the child. During the course of visitation, the appellant never addressed or referred to his child by name, a noticeable omission during the termination proceedings as well.
From the aforementioned evidence, the hearing court properly concluded that the appellant exhibits a repeated and continued incapacity in his parenting role, and further that the conditions and causes of that incapacity will not be *507 remedied. His mere physical presence and his expressed, but untranslated desires to parent do not satisfy the affirmative duties of parenthood nor do they indicate a potential for their development. To require any additional evidence, as sought by the majority, ignores the critical needs of the child and places an unreasonable barrier, perhaps one that extinguishes the potential of permanently freeing the child for adoption. The hearing court, in granting the termination order, upheld the needs and the rights of the child and did so in accordance with the standard of clear and convincing evidence.
The order terminating parental rights should be affirmed.
NOTES
[1] The issues not addressed in the opinion are: whether the agency-appellee failed to aid appellant in remedying his parenting difficulties; and, whether, if the evidence relied upon by the court below met the clear and convincing standard of proof, the statute, as applied to this case, was constitutional. Due to the fact that we are reversing, it is not necessary to determine these issues.
[2] Act of July 24, 1970, P.L. 620, No. 208, 1 P.S. §§ 101 to 603, repealed, effective, January 1, 1981.
[3] Act of October 15, 1980, P.L. 934, No. 163, § 1, 23 Pa.C.S. §§ 2101 to 2908, effective, January 1, 1981.
[4] The determination of the scope of review in custody cases has been recently determined by this court, en banc, in In re Donna W., 325 Pa.Super.Ct. 39, 472 A.2d 635 (1984) (Petition for Allocatur filed March 22, 1984).
[5] The Santosky court held that ". . . determination of the precise burden equal to or greater than that standard [clear and convincing evidence] is a matter of state law properly left to state legislatures and state courts." 455 U.S. at 769-70, 102 S.Ct. at 1402-1403. The Pennsylvania Supreme Court determined in In re T.R., 502 Pa. 165, 465 A.2d 642 (1983), that the clear and convincing standard would be adopted "as a matter of state law applicable to all termination proceedings." Id., 502 Pa. 165, 465 A.2d at 642.
[6] Interestingly, the trial court used the clear and convincing standard even though the hearing was pre-Santosky. The history of the burden of proof required in termination of parental rights cases in Pennsylvania is explained in In re Adoption of M.E.T., 313 Pa.Super. 316, 459 A.2d 1247 (1983).