519 A.2d 1030

**In the Interest of C.W. a/k/a W.C.W., a Minor.**

**Appeal of B.L.W.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1987.

Filed Jan. 7, 1987.

Donald E. Williams, New Castle, for appellant.
Sydney W. Paul, New Castle, for appellee.

Before BROSKY, ROWLEY and POPOVICH, JJ.

138

BROSKY, Judge:

This is an appeal from the Decree entered by the trial court which terminated the natural mother's (hereinafter appellant's) parental rights with regard to her eight year old daughter.

Appellant presents the following issues for our consideration: (1) whether the natural mother, by conduct continuing for at least six months, evidence a settled purpose of relinquishing parental claim to her minor daughter; (2) whether the natural mother, for a period of at least six months, refused or failed to perform parental duties; (3) whether the conditions which led to the removal of the child from the custody of the natural mother continued to exist; (4) whether any basis for the termination of the natural mother's parental rights was established by clear and convincing evidence; and (5) whether the procedures followed by appellee and the trial court substantially violated any equitable principles which would deny justice to appellant. Because we find appellant's contentions to have merit we reverse the decision of the trial court.

The facts of this case have led the parties down a long and tortured path before coming to rest before this Court. The minor child was born on March 14, 1978 at the U.S. Naval Center, Portsmouth, Virginia, to appellant and Albert Leslie White, her father, then on active duty in the U.S. Navy at Portsmouth. At the time of her marriage to Albert Leslie White, appellant had another daughter, born June 15, 1975 who made up their marital home in Norfolk, Virginia. Appellant left there with her two daughters when the child in question was one month old. Appellant returned to Pennsylvania and secured her own apartment. Appellant also secured a job and hired Marie Saul as a babysitter for which she was paid. Although this caretaker arrangement was entered into agreeably it apparently soured, prompting appellant to file a petition for Writ of Habeas Corpus against Marie Saul. The issue was amicably resolved and an Order was entered on November 7, 1979 granting custody of the child to appellant.

Just before the child's second birthday she was taken from appellant by Marie Saul and Jean Silvis. Appellant took her back into her possession for eight days when a representative of Lawrence County Children's Services came to appellant's house, took the child to Marie Saul's and left her there. From that time on appellant never had possession of her child except for visitations.

In the meantime appellant's mother, Jean Silvis, filed a petition requesting custody of the minor. Her petition alleged that the child resided with Marie Saul from January 25, 1980 until July 5, 1980, and that she resided with Jean Silvis from July 5, 1980 until the filing of the custody petition. Jean Silvis subsequently filed a second petition, this one for temporary custody, in which she alleged that appellant forcibly removed the child from her home on July 23, 1980. By Order dated October, 1980, the court granted custody of the child to the Lawrence County Children's Services (hereinafter, appellee), with visitations between appellant and her daughter, frequently at times and sporadic at times, as circumstances called for. Visits were scheduled at first twice a week. They began in appellee's office and progressed to overnight visits which went fairly well. In early 1982 visits become less frequent and on May 19, 1982 appellant met with appellee and agreed to a plan of reconstituting the parental relationship. Visitations continued with a pattern of renewed interest through August, 1982. At that time appellant's fiancee (present husband) was severely injured and hospitalized. That Fall appellant and her fiancee were married and moved to North Carolina to live. Appellant has continued to reside there until the present time. She has had contacts with the social service agency in North Carolina and that agency found the influence of appellant's new husband over appellant to be positive and found the home upon inspection satisfactory.

By reason of newly adopted Pennsylvania Department of Public Welfare regulations *requiring* a six month placement and disposition review hearing, Lawrence County Children's Services on June 9, 1983 petitioned the court for a

review hearing which was scheduled for the 20th day of June, 1983. At that hearing, the Master recommended that the child be returned immediately to appellant who was then living in North Carolina. The court refused the Master's recommendation and instead directed that the child be returned to appellant pursuant to three conditions: (1) the transfer was to be done gradually; (2) appellee was to create a plan to facilitate the child's transfer; and (3) psychological counseling was to be made immediately available to the child. Following a review hearing and the taking of additional testimony, including an *in camera* hearing and testimony of a child psychiatrist, an Order was entered on May 3, 1984 directing that legal custody of the child remain with appellee. The caretaker responsibilities remained with Marie Saul.

On December 19, 1984, appellee instituted a petition seeking the involuntary termination of appellant's parental rights. Following a hearing which included an *in camera* interview of the minor child, the trial court held that appellant failed to maintain any meaningful contact with her daughter from May 25, 1984 to January 8, 1985. Appellant's parental rights were then terminated.

Because all of the issues raised by appellant are directly related to each other and to the fact situation giving rise to the involuntary termination of appellant's parental rights, we find it unnecessary to address them individually.

We begin our discussion by looking first at the standard of review in a proceeding which terminates parental rights. Our scope of review is limited to determining whether the trial court's finding a clear necessity for termination of parental rights is supported by competent evidence. *In re Adoption of M.M.*, 492 Pa. 457, 424 A.2d 1280 (1981); *Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976). Although an appellate court may not reweigh credibility, *Adoption of S.H.*, 476 Pa. 608, 383 A.2d 529 (1978), the trial court's inferences, deductions and conclusions are subject to review. *Matter of M.L.W.*, 307 Pa.Super. 29, 452 A.2d 1021 (1982).

The Pennsylvania statute which allows the involuntary termination of parental rights provides, in pertinent part:

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(1) and (2). Both of the factors listed in the statute must be analyzed in relation to the particular circumstances of the case. *In re Adoption of M.M., supra* 492 Pa. at 461, 424 A.2d at 1282. In the case *sub judice* the six month period in which appellant allegedly "evidenced a settled purpose of relinquishing parental claim" was May 5, 1984 through January 8, 1985. Although the contact between appellant and her daughter was admittedly sparse during this period we must examine the situation as a whole before drawing any conclusions.

■ At the time of the birth of the child in question appellant was very young and was apparently experiencing problems which initially led her to seek a caretaker relationship with Marie Saul. Past conduct, however, will not provide sufficient grounds on which to terminate a parent's rights. *In re Howard*, 468 Pa. 71, 360 A.2d 184 (1976). The Pennsylvania Supreme Court has held that "a parent who makes suitable arrangements for the care of a child for a temporary crisis does not by such an act alone fail or refuse to perform parental duties ..." *Id.*, 468 Pa. at 84, 360 A.2d at 190.

Following this arrangement with Mrs. Saul, appellant tried time and again to regain custody of her child. Her efforts

were somewhat frustrated by her relocation to North Carolina which was necessitated by her new husband's health. Additionally, appellant's efforts, while not directly resisted, were certainly not encouraged by Mrs. Saul or appellee. The record discloses that although appellant wrote letters and sent cards to her daughter, she was receiving no feedback or proof that her child received them. The caseworker testified that she delivered the correspondence to Mrs. Saul but never read the letters to the child nor did she ever make sure that appellant was apprised of her daughter's having received them. There is no evidence that appellant was kept current as to her daughter's welfare by either Mrs. Saul or appellee, and appellant was not permitted to contact her child except through the caseworker which rarely occurred.

■ This places a very heavy burden upon appellee. In a case such as this it becomes the duty of the agency, in this case appellee, to take the role of initiator in attempting to not only maintain contact between a parent and child but to develop a program for the return of the child to the parent. For even if removal is necessary to protect the child, every effort should be made to reunite the family. *Matter of M.L.W., supra,* 307 Pa.Super. at 33, 452 A.2d at 1024; *In re Adoption of R.I.,* 468 Pa. 287, 361 A.2d 294 (1976). As this Court has said in the past:

> A parent must be able to seek the assistance of a Child Welfare Service with the expectation that the agency will exert its best efforts in working with the parent and the child to improve the parent's skills and understanding. The premature filing of termination petitions by an agency thwarts the trust necessary for the advancement of the purposes of this relationship between agency and parent.

*Matter of M.L.W., supra* 307 Pa.Super. at 36, 452 A.2d at 1025. Appellee here has failed to fulfill this very sensitive and fragile role.

■ The trial court has overlooked a very important factor in the termination of parental rights by failing to

consider appellant's current lifestyle. As stated in the statute, parental rights may be terminated only where it appears that a parent cannot or will not remedy the conditions which gave rise to the parent's incapacity. Although evidence that a mother subsequently had another child for which she was able to adequately care will not automatically prevent termination of her rights, *Matter of Adoption of G.T.M.*, 506 Pa. 44, 483 A.2d 1355 (1984), we feel that appellant has demonstrated a substantial reform in her situation so as to conclude that she has remedied her incapacity.

We have a woman who has, since the initial removal of her child, entered into an apparently stable marriage with a man who can provide a healthy atmosphere for the minor child. Appellant has also assumed responsibility for raising stepchildren as well as another child of her own and is, by all accounts, a very capable and devoted parent. Although the child in question never resided with appellant long enough to enable appellant to establish her ability as a parent, the path which appellant's life has since taken provides ample evidence by which her parenting skills may be evaluated. This court has held in the past that the mere possibility of rehabilitating appellant's parenting skills within two and one-half years was not an unreasonable period of time within 23 Pa.C.S.A. § 2511(a). *In re Interest of C.M.E.*, 301 Pa.Super. 579, 448 A.2d 59 (1982). In the instant case appellant's rehabilitation was more than a mere possibility for it has been amply proven by her actions.

Because of the importance placed on the family, the Commonwealth may disrupt the parent-child relationship only upon a showing of clear necessity. *In re Interest of C.M.E.*, Id. We find this to be lacking in the instant appeal. The court has terminated parental rights where a parent continually refused to learn to deal with a child's special physical needs or to cooperate with counsellors charged with instructing the mother in parenting duties. *In re D.K.W.*, 490 Pa. 134, 415 A.2d 69 (1980). The courts have, however, declined to terminate parental rights where there

has been even sparse contact as long as the parent did not evidence an intent to abandon the child or refuse to perform parental duties. *In re Adoption of McAhren*, 460 Pa. 63, 331 A.2d 419 (1975).

■ In the instant case the trial court placed great emphasis upon the testimony of Mrs. Saul and a psychiatrist who had spoken with Mrs. Saul about the child. Mrs. Saul testified that the child became very upset when appellant was mentioned or when appellant sent cards or letters. The psychiatrist testified that the child had difficulty sleeping and also reiterated the statements regarding the child's emotional trauma. What the trial court failed to mention was that the psychiatrist's information was *given to her by Mrs. Saul.* The Pennsylvania Supreme Court has refused to allow termination when the decree is based on hearsay. *Adoption of R.I.*, 468 Pa. 287, 361 A.2d 294 (1976).

After a careful review of the record we cannot say that appellee proved by clear and convincing evidence that appellant evidenced a settled purpose of relinquishing her parental claim or failed to perform parental duties. The situation is thus lacking the "clear necessity" required for termination of parental rights by the Court. We also find that appellant has sufficiently remedied any incapacity with regard to parenthood, thereby negating the necessary grounds for 23 Pa.C.S.A. § 2511(a)(1) and (2). Therefore, we reverse the decree of the trial court.

Case remanded to the trial court so that a program may be formulated by which the relationship between the natural mother and her minor daughter may be recultivated and every effort should be made by the agency to reestablish the child with her mother.

Decree reversed. Case remanded. Jurisdiction relinquished.

ROWLEY, J., files a dissenting statement.

ROWLEY, Judge, dissenting:

I respectfully dissent. My review of the record convinces me that this case is controlled by the recent unanimous decision of the Pennsylvania Supreme Court in *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986).