455 A.2d 1221

**In the Matter of the ADOPTION OF K.S.C. and D.J.C.**

**Appeal of J.C.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1982.

Filed Jan. 21, 1983.

Terrence P. Cavanaugh, Erie, for appellant.

Jeffrey A. Connelly, Erie, for appellees.

William A. Dopierala, Erie, for Childrens, participating party.

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This is an appeal from a final order dated March 1, 1982, involuntarily terminating the parental rights of J.C. to her children K.S.C., age 15, and D.J.C., age 12.[1] For the reasons stated below, we vacate the order and remand the case to the lower court.

In December of 1977, J.C., who resided in Corry, Pennsylvania, voluntarily entrusted K.S.C. and D.J.C. to Children's Services for temporary placement in a foster home. At that time, J.C. was seriously handicapped from an automobile accident the previous year. On July 17, 1978, the children were adjudicated dependent and, at the same time, J.C. was ordered to cooperate with the services offered by the Bureau of Vocational Rehabilitation. J.C. did, in fact, obtain employment, through B.V.R., at the Gertrude Barber Center in Corry, where she remained until July of 1979. K.S.C. and D.J.C. were placed in their present foster home in Erie (30 miles away from their mother) in February of 1979.[2] Short visits took place at J.C.'s residences. In April 1980,

1. The parental rights of the natural father were terminated in the same order on the basis that he, by conduct which continued for a period in excess of six months, has evidenced a settled purpose of relinquishing parental claim to the children, and has failed to perform parental duties. 23 Pa.C.S.A. § 2511(a)(1). He had not seen the children in over a year, did not appear to contest the involuntary petition and advised the agency that he did not want the children.

2. A third child, J.C. II, age 16, was also in foster care at this time. She returned to her mother in December of 1981 and was residing with J.C. at the time of the termination hearing.

three weekend visits were arranged at an apartment J.C. shared in Erie. The children were unruly after these visits and the visits were stopped.[3] On May 15, 1980, after a review hearing, it was ordered that visits take place only at J.C.'s or the children's request and J.C. was further ordered to provide her own transportation. In November 1980, two visits took place at the agency. Because of a variety of logistical problems,[4] there were no further visits until July 7, 1981, when J.C. went to the foster home. In April 1981, a further treatment plan had been proposed to J.C. which included: (1) setting up a stable household in one place;[5] (2) obtaining nutritional counseling;[6] (3) obtaining proper medical care for herself and the children; (4) obtaining mental health counseling; (5) improving her money management skills; (6) continuing her employment with Gertrude

3. At some time prior to the weekend visits, it was discovered that both children had diabetic conditions which necessitated a regular balanced diet with little or no sweets. Apparently, however, their diet was not calorically restricted. There was much conflicting testimony as to whether the children were properly fed when visiting with J.C. and this apparently influenced the decision to terminate visits. Also, although the caseworker testified she explained the dietary restrictions to J.C., nutritional counseling was available only in Erie and not in Corry. J.C.'s testimony was that she did ask her family doctor about a diabetic diet and was advised that the children were not on a special diet.

4. For example, J.C. did request a visit during the children's Easter vacation. Unfortunately, the letter, which was dated April 17, was received by the Agency on April 20 but did not reach J.C.'s caseworker until April 21 by which time the Easter vacation was over. It should also be noted that neither J.C., nor her mother with whom she often resided, owned a car. An additional problem with scheduling visits was that J.C. did not have a phone and relied on letters for contacting the Agency and the children.

5. For a variety of reasons, including, no doubt, the fact that J.C.'s income was unstable and inadequate, J.C. had moved quite frequently during the time the children were in foster care. Some of these moves were to Erie in an attempt to be closer to the children.

6. See fn. 3.

Barber Center;[7] and (7) improving her parenting skills.[8] Sometime in June 1981, J.C. moved to a farm in the Corry area and the caseworker was unable to locate the farm. She did finally meet with J.C. in August 1981. After that meeting, the caseworker testified, the children said they did not want to visit J.C.[9] and the involuntary termination petition was filed. It is undisputed that J.C. did keep in touch with her children through letters and phone calls. The lower court terminated J.C.'s parental rights on several grounds, each of which we will address separately.

The first ground relied on by the lower court is that contained in 23 Pa.C.S.A. § 2511(a)(5), which provides:

"The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

We believe there is insufficient evidence to support termination on this basis.[10] In the first place, the evidence regard-

7. J.C. had left the Center in July of 1979 due to her having contracted scabies. She also worked briefly at the Erie Center. By the time this plan was proposed, J.C. was again living in Corry and there were no openings at the Corry Center.

8. It is interesting to note that, after each review hearing, additional conditions were imposed on J.C. as prerequisites to the return of her children. In addition, the Agency provided very little, if any, assistance to J.C. in fulfilling these conditions.

9. The children's decision was apparently the result of their having received letters from J.C. promising visits which never materialized. The caseworker subsequently testified that the children enjoyed visiting with J.C.

10. We discuss below the United States Supreme Court's decision that clear and convincing evidence must underlie a determination to

ing the conditions which led to the placement of the children was both vague and meager. We are unable to tell from the record whether those conditions have changed or not since the only "condition" alleged by Children's Services is "neglect." In addition, this section of the statute requires the court to consider the services and assistance offered the parent by the agency in an effort to correct the conditions which led to placement. *See,* 23 Pa.C.S.A. § 2511, 1980 Source and Comment. Again, the record shows little or no assistance was provided to J.C. by Children's Services. Therefore, as to termination of J.C.'s parental rights under 23 Pa.C.S.A. § 2511(a)(5), we must reverse the order of the lower court, there being insufficient evidence to support it.

The second ground relied on by the lower court was that J.C. had, by conduct continuing for over six months, failed to perform her parental duties. 23 Pa.C.S.A. § 2511(a)(1). The mere fact that a parent does not have custody does not alone support termination of parental rights. *See, e.g., In re Adoption of J.A.B.,* 487 Pa. 79, 408 A.2d 1363 (1979). A non-custodial parent must, however, affirmatively demonstrate her love, protection and support of her children and must make every reasonable effort to maintain communication and association with her children. *In re Farabelli,* 460 Pa. 423, 333 A.2d 846 (1975). In addition, the court must look at the individual circumstances of the parent to determine whether she has utilized those resources available to her to maintain a relationship with her children. *In re Adoption of P.,* 475 Pa. 197, 380 A.2d 311 (1977). We are also mindful of the recent United States Supreme Court decision holding that parental rights may be involuntarily terminated only if the petitioner proves by *clear and convincing* evidence that grounds for termina-

terminate parental rights. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We do not find it necessary to discuss this holding in connection with this first basis for terminating J.C.'s parental rights since we are unable to find that even a preponderance of the evidence supports the lower court's order under 23 Pa.C.S.A. § 2511(a)(5).

tion exist. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).[11]

In the instant case, it is true that more than six months elapsed between the November 1980 visits and the July 1981 visits. It is, however, undisputed that other contacts, with the Agency and the children, were maintained. J.C. frequently wrote to the children, despite the fact that she received no letters from them. She also attempted, albeit unsuccessfully, to arrange at least one other visit. On the other hand, J.C.'s attempts to comply with the conditions of the Agency and its treatment plans were, for the most part, ineffectual, although not necessarily insincere.

In reviewing previous termination cases, we see that, in those cases where termination was proper, there was far less contact between the parent and the child than is true in the instant case.[12] Conversely, in those cases where an order of termination was reversed (or where the lower court refused to order termination), there was greater success in meeting the goals required by the court or the agency.[13] These previous cases were, of course, decided under the less stringent preponderance of the evidence burden of proof,

11. The lower court's opinion does not specify the standard by which the court evaluated the evidence. The instant matter was, however, decided prior to *Santosky*, supra.

12. See, e.g., *In re L.A.G.*, 490 Pa. 85, 415 A.2d 44 (1980) (no contact with child or agency for eleven months); *In re Adoption of Y.S.*, 487 Pa. 99, 408 A.2d 1373 (1979) (no contact with child or foster parents for over a year); *In re W.M. III*, 482 Pa. 123, 393 A.2d 410 (1978) (no contact with nor interest in child for eight years); *In re Burns*, 474 Pa. 615, 379 A.2d 535 (1977) (no contact with children or agency for ten months).

13. See, e.g., *In re Adoption of M.M.*, 492 Pa. 457, 424 A.2d 1280 (1981) (parents obtained more suitable housing and purchased a crib for the child); *In re Adoption of P.*, 475 Pa. 197, 380 A.2d 311 (1977) (although child abused by stepfather, mother encouraged stepfather to obtain counseling and subsequently lived apart from stepfather); *In re Howard*, 468 Pa. 71, 360 A.2d 184 (1976) (mother had obtained full-time employment and suitable housing and was engaged to marry a soldier who had a good job awaiting him upon his discharge).

rather than the clear and convincing standard required by *Santosky, supra.*[14] Because the parties should have the benefit of this stricter standard of proof at the trial level, *see Santosky, supra,* 455 U.S. at 757, 102 S.Ct. at 1396, 71 L.Ed.2d at 609, and because the trial court is in a better position to assess the credibility of the witnesses, we must vacate the order of termination and remand this case to the lower court for reconsideration in light of *Santosky, supra.*

The final ground on which the lower court ordered termination in this case is that the repeated and continued incapacity and neglect of J.C. caused the children to be without essential parental care and the conditions and causes of this incapacity and neglect cannot be remedied. 23 Pa.C.S.A. § 2511(a)(2). We believe our previous analysis of *Santosky, supra,* applies as well to termination on this basis.[15]

For these reasons, we reverse the order of termination under 23 Pa.C.S.A. § 2511(a)(5) and vacate the order of termination under 23 Pa.C.S.A. § 2511(a)(1) and (2) and remand for reconsideration in light of *Santosky, supra.* We relinquish jurisdiction.

**14.** As noted in *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981), it has long been recognized that a party whose case is pending on direct appeal is entitled to the benefit of changes in the law occurring before final judgment. Therefore, the requirement of clear and convincing evidence enunciated in *Santosky,* supra, must be applied to the instant case. See also, *Appeal of G.J.A.,* 304 Pa.Super. 21, 450 A.2d 80 (1982).

**15.** Because of our disposition, we need not discuss whether J.C. had been afforded a reasonable time in which to remedy the conditions of incapacity and neglect which allegedly caused her children to be without parental care. In this regard, however, we find it noteworthy that, in a case decided during the pendency of this appeal, a period of two and one-half years was held to be reasonable under all the circumstances. *In re Interest of C.M.E.,* 301 Pa.Super. 579, 448 A.2d 59 (1982).