504 A.2d 1303

**In the Matter of the ADOPTION OF A.K.M. and S.M.C.**

**Appeal of D.D.H.C.**

Superior Court of Pennsylvania.

Submitted June 18, 1985.

Filed Feb. 3, 1986.

Marilyn Woolery, Erie, for appellant.

Ronald L. Slater, Erie, for appellee.

Before ROWLEY, OLSZEWSKI and DEL SOLE, JJ.

DEL SOLE, Judge:

This case comes to us on appeal from the trial court order which terminated the Appellant's parental rights in her two daughters, A.K.M. and S.M.C. Because the evidence relied on by the trial court to support the termination decrees is not clear and convincing, we reverse.

At a young age, the Appellant was adjudicated a dependent child and was placed under the care of Children's Services. In 1978, when the Appellant was sixteen years old, her first child, A.K.M. was born. A.K.M. lived with her mother for nearly two years before being placed in the home of her maternal grandparents. The child remained there for four years; she has recently been removed to a foster home.

Appellant's younger daughter, S.M.C. was born in 1981. She lived with her mother for fifteen months, at which time the Appellant voluntarily relinquished custody to a close friend. When this friend was no longer able to care for S.M.C. the child was adjudicated a dependent and placed in a foster home.

On several occasions beginning in September, 1980, the court directed the Appellant to obtain mental health counseling, cooperate with Children's Services and public health nurses, attend parenting classes, gain employment or obtain vocational training, maintain a residence and stabilize her relationships with men. For several years, on an inconsistent basis, Appellant attempted to achieve these goals.

Two hearings were held in the spring of 1984, after which time the court issued an order terminating the Appellant's parental rights in A.K.M. and S.M.C. Appellant now challenges this order and alleges that the statutory requirements of 23 Pa.C.S.A. §§ 2511(a)(2) and (a)(5) were not satisfied by a showing of clear and convincing evidence; that the lower court improperly considered the best interests of the children in terminating the Appellant's parental rights; and that the trial court failed to acknowledge the interference caused by Children's Services in the Appellant's relationship with her children.[1]

The sections of the statute which the trial court relied on to terminate the Appellant's parental rights provide as follows:

1. In the light of our disposition of the first issue, we need not reach Appellant's second and third issues.

## § 2511. Grounds for involuntary termination

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

.    .    .    .    .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

.    .    .    .    .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions which led to the removal or placement of the child within a reasonable period of itme and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(2) and 2511(a)(5).

Section (a)(2) of the statute set forth above provides that parental rights may be terminated if there is evidence of abuse or neglect *and* these conditions will not or cannot be remedied in the future. Section (a)(5) provides that parental rights may be terminated when a child has been in placement for six months (as have been both of Appellant's children) *and* the conditions which led to the placement are not likely to be remedied in the future. In other words, under either section of the statute, there must be evidence of severe deficiencies in parental care at the present *and* evidence that these deficiencies cannot or will not be remedied in the future.

The Supreme Court of the United States has held that the due process clause of the fourteenth amendment demands that the standard of proof to be employed in a termination

proceeding be clear and convincing evidence. In establishing this rule the Supreme Court stated:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

It is well settled in Pennsylvania that when an appellate court is faced with a termination of parental rights case, it must employ a broad scope of review. *Matter of Adoption of Baby Boy Allen,* 337 Pa.Super. 133, 486 A.2d 517 (1984); *In re Adoption of Michael J.C.,* 506 Pa. 517, 486 A.2d 371 (1984); *Matter of Adoption of Ferrante,* 334 Pa.Super. 53, 482 A.2d 1076 (1984); *In re Baby Boy P.,* 333 Pa.Super. 462, 482 A.2d 660 (1984); *In re Adoption of James J.,* 332 Pa.Super. 486, 481 A.2d 892 (1984) (en banc). In the latter case, this Court carefully noted a distinction between the duties imposed on the trial and appellate courts. It indicated that while the lower court is obligated to draw a conclusion based on clear and convincing evidence, the appellate court must ensure that the trial court has satisfactorily examined all evidentiary resources, has conducted a full hearing, and has set forth its decision in a full discursive opinion. *James J.,* 332 Pa.Superior Ct. at 491, 481 A.2d 894. If upon such a review the appellate court finds a lack of evidentiary support, an abuse of discretion or an error of law the order of the trial court will be reversed. *Adoption of James J., supra,* 332 Pa.Superior Ct. at 494, 481 A.2d at

896. We find this to be a case where such a reversal is mandated.

■ In his opinion the trial judge sets forth the evidence which he found, in the light of 23 Pa.C.S.A. §§ 2511(a)(2) and (a)(5) quoted above, to support the termination orders. He found the Appellant has had many, many boyfriends since the children were born; that the Appellant moves frequently; that the Appellant is immature and has led her own life rather than on concentrating on her role as a parent; that Appellant has not done well with parenting classes; that the Appellant has not had a job since 1980; that the Appellant has made suicide attempts. While we concede that the evidence relied on by the trial court is indeed evidence that the Appellant is not the most capable parent we are not persuaded that it is evidence so clear and convincing of neglect or abuse as to justify the termination of the Appellant's parental rights in either A.K.M. or in S.M.C. We reverse for this reason and also because we do not find the record contains clear and convincing evidence that the deficiencies which exist cannot or will not be remedied in the future. On the contrary, there is much evidence that the Appellant is making improvements in her life as have been directed by the court and by Children's Services.

Looking first at the case of A.K.M., as noted above the Appellant was sixteen when the child was born. The record shows that A.K.M. was adjudicated dependent shortly after birth because the Appellant was still a dependent child and she wanted to be placed with her daughter. The two girls, mother and daughter, were placed in a foster home for a few months and then moved to the home of Appellant's parents. In May, 1979, the Appellant married Steve Cooper. A.K.M. lived with Appellant and her husband, first in the Erie area and then in Florida from September, 1979 to July, 1980. After they moved back to Erie, marital difficulties had developed, the Appellant was pregnant with S.M.C., and the Appellant made a suicide attempt. A.K.M. lived with her maternal grandparents from that time until the

time of the hearings in this case—spring of 1984. The Appellant lived there too, from time to time, and visited A.K.M. regularly when she was not living with her. Appellant now resides with her boyfriend of over one year at his parents' home. The caseworker testified that A.K.M. welcomes the Appellant's visits and likes her mother's boyfriend.

■ Admittedly, the Appellant's relationship with her older daughter is a closer one than with her younger daughter, S.M.C., since A.K.M. has lived most of her life with her maternal grandparents or with the Appellant. The younger child was born when the Appellant was 19 years old. When S.M.C. was fifteen months old, the Appellant placed her in the care of a close family friend, the Reverend Anise Fling. The Reverend Fling testified that the Appellant gave S.M.C. to her to care for because, "She knew I'd love her; she knew she would get good care." The record shows that while S.M.C. lived with the Reverend Fling the Appellant visited her occasionally and telephoned to check on the baby regularly. When Mrs. Fling was no longer able to care for S.M.C. because of health problems, the child was placed in a foster home. The Appellant was permitted to have a visit with S.M.C. every two weeks, arranged for and supervised by the Children's Services. At the time of the April, 1984 hearing, she was scheduling approximately one visit per month. Her caseworker testified that the visits went well and that at the suggestion of the caseworker the visiting time was increased from one to two hours per visit. The foster mother, who is interested in adopting S.M.C., testified that there were problems with S.M.C. immediately after the visits with her mother, such as throwing things and having accidents. This, however, is not sufficient evidence upon which to base a termination decree. At the June, 1984 hearing, the Appellant testified that she had just started to send cards and letters to S.M.C. because she had not been told that she was allowed to do so before. Although the testimony at the hearings indicated that the Appellant is closer to A.K.M. than to S.M.C., there was

evidence that the Appellant visited both girls on a regular basis.

The record reveals much improvement on the part of Appellant. When Appellant was threatened with the termination of her parental rights in A.K.M. by the Children's Services of Erie County in February, 1983, she made an agreement with the agency to make certain efforts to improve her situation. The record shows that she signed a contract drawn up by her caseworker whereby she agreed to find a job, to call her caseworker once a week, to see a mental health counselor, to discontinue her practice of bringing a variety of men home with her, and to discontinue her use of chemical substances in A.K.M.'s presence, all of this to be done within ninety days. Appellant's caseworker testified that she never intended Appellant to fulfill the contract literally, just to make some effort. The record shows that she began calling her caseworker every two weeks, which was an improvement over prior practice. She did not want to attend counseling sessions, but did in fact attend three sessions before the treatment was ended by a mutual decision of the Appellant and the counselor. The record shows she made many attempts to find a job but was unable to do so. She has attended GED classes to put herself in a more advantageous position in the job market, since she has only a seventh grade education. Her inability to find a job has made it impossible for her to establish her own home and at present she is living with her boyfriend in the boyfriend's parents' home. She has apparently ended her practice of having many boyfriends, and at the time of the June, 1984 hearing she had been involved with the same man for over one year. At this hearing she stated she was willing to attend parenting classes. A psychiatrist offered testimony at this hearing that the Appellant is a poor parent because she is immature. Immaturity can be remedied. In short, the record provides evidence that the Appellant is doing better as she gets older.

In an opinion filed recently by a panel of our Court, we noted that under § 2511(a)(2) of the Adoption Act, one of the sections relied on by the trial court in the instant case,

the parents' interests in the continued relationship with their children are protected by the requirement that their parental rights may not be terminated unless it is proved that their capacity "cannot or will not be remedied". *In Re Adoption of M.J.H., A Minor*, 348 Pa.Super. 65, ——, 501 A.2d 648, 654 (1985) (Citations omitted). The same protection is afforded parents under § 2511(a)(5), also relied on by the court in the instant case, which requires proof that a parent cannot or will not remedy conditions which led to the placement of a child within a reasonable amount of time. In *Adoption of M.J.H.*, we reinstated the order of a hearing judge who terminated the parental rights of a father who had shot and killed the child's mother and who was serving a life term in prison. We found in that case the father's imprisonment made him incapable of providing his child with what she needs on a day to day basis and that this incapacity will not be remedied. *Adoption of M.J.H., supra*, 348 Pa.Superior Ct. 65, 501 A.2d 648, 656. The facts in the instant case are quite different. We find in this case that the Appellee has failed to meet its burden of producing clear and convincing evidence of the Appellant's inability to remedy present incapacities.

We are mindful that our role as a reviewing court is limited to the determination of whether the decree of termination is supported by competent evidence. In the matter of the *Adoption of G.T.M.*, 506 Pa. 44, 483 A.2d 1355 (1984). The appellate court is not permitted to make an independent determination of the facts as it perceives them from the record. *In Re Adoption of Faith M. and Victoria M.*, 509 Pa. ——, ——, 501 A.2d 1105, 1106 (1985). However, in this case we have found the evidence of irremediable incapacity insufficient in light of the due process clause of the fourteenth amendment and we therefore reverse the order of the trial court which terminates D.D.H.C.'s parental rights in A.K.M. and S.M.C.

Order reversed.

OLSZEWSKI, J., files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting:

After a careful and painstaking review of this termination of parental rights case, I have come to the conclusion that the lower court was correct in terminating appellant's rights in S.M.C. I disagree, however, with the lower court's decision to terminate the parental rights of appellant in her daughter, A.K.M. While I am somewhat reluctant to make this split decision, I believe the facts of this case justify this result.[1]

The concept of family has traditionally been given a place of esteem in our culture. As a result, the United States Supreme Court has historically recognized that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978); *Smith v. Organization of Foster Families,* 431 U.S. 816, 845, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977); *Moore v. East Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977) (plurality opinion); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974); *Stanley v. Illinois,* 405 U.S. 645, 651–652, 92 S.Ct. 1208, 1212–1213, 31 L.Ed.2d 551 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 573–574, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). When a state therefore moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures. *Santosky v. Kramer,* 455 U.S. 745, 753–754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599, 606 (1982).

---

1. As a general rule in custody cases, absent compelling reasons to the contrary, siblings should be raised in the same household. This rule, however, must yield to the principle that the best interests of each individual child must be given primary consideration. *Commonwealth ex rel. Newcomer,* 301 Pa.Super. 239, 447 A.2d 630 (1982). Since the statute or case law in parental termination cases is silent on this issue, we believe that if similar concepts were to be adopted in the case before us, compelling reasons, as outlined above, justify our findings.

It is our responsibility in reviewing a parental termination decision to examine all evidentiary resources and to survey the entire record in order to "ensure that the trial court has satisfactorily examined all evidentiary resources, has conducted a full hearing, and has set forth its decision in a full discursive opinion." *In re Adoption of James J.*, 332 Pa.Super. 486, 491, 481 A.2d 892, 894 (1984) (en banc). I do not hesitate to add, however, that this court must not overstep its bounds and assume that it has the duty or privilege of making its own independent determination of fact.[2] Nevertheless, this limitation does not preclude us from "employing a broad and searching review for the protection of the parties in ensuring that the inquiry of the lower court is complete and that its decision was made in accordance with the due process clause of the Fourteenth Amendment in protecting the fundamental liberty interest of natural parents in their child." *Id.*, 332 Pa.Superior Ct. at 491, 481 A.2d at 895. As a result, this court must not reverse an order terminating parental rights, unless it is apparent that the trial court abused its discretion, committed an error of law, or lacked evidentiary support for its findings. *Id.*, 332 Pa.Superior Ct. at 494, 481 A.2d at 896.

The central theme surrounding this case can be characterized by the words of the Irish playwright, critic, and social reformer, George Bernard Shaw, when he wrote: "Parentage is a very important profession; but no test for it is ever imposed in the interest of the children." With this in mind, I respectfully disagree with my colleagues' decision to reverse the lower court's judgment terminating appellant's parental rights in S.M.C. I agree, however, with their decision to reverse the lower court's judgment terminating appellant's parental rights in A.K.M.

Since my colleagues have aptly stated the facts, I need not reiterate them here. Nevertheless, some clarification is

---

**2.** The scope of review in termination cases is to be distinguished from that review employed in custody cases. In the latter type case, this Court, in *In re Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984) (en banc), held that it was required to exercise independent judgment and would not adhere to an abuse of discretion standard.

necessary to justify my conclusion to terminate appellant's rights in one child but not in the other.

Appellant was adjudicated a dependent child at a young age and was placed under the care of Children's Services. At the age of sixteen, appellant's first child, A.K.M., was born. A.K.M. lived with appellant for nearly two years before being placed in the home of her maternal grandparents. She remained there for four years until she was removed to a foster home. Appellant's younger daughter, S.M.C., lived with her mother for fifteen months, before the appellant voluntarily relinquished custody of this child to a close friend. When this friend was no longer able to care for the child, S.M.C. was adjudicated a dependent child and placed in a foster home. It is this Court's understanding that this family wishes to adopt S.M.C., who is now four years old.

Since S.M.C. was placed in a foster home, appellant has had only five visits with this child over a six month period. Although the visits were "friendly," there is testimony from the foster parent that the child became unusually quiet and reserved before visits with her natural mother and unruly and upset after these visits. It appears that appellant is not motivated to strengthen her ties with S.M.C. and whatever communication exists is the result of agency initiation. Clearly, the appellant has chosen to exclude S.M.C. from her family, whether guided by indifference or intent. It is doubtful whether S.M.C. even recognizes appellant as her mother, or A.K.M. as her sister.

I therefore conclude that clear and convincing evidence of the appellant's repeated, continued, and irremediable incapacity and neglect has been shown pursuant to Sec. 2511(a)(2). In addition, I find support in the record that the parent has failed to remedy the conditions which initially occasioned S.M.C.'s removal from her care. Consequently, I feel that the termination of parental rights would best serve the needs and welfare of this child under Sec. 2511(a)(5).

The situation surrounding the appellant's relationship with her older daughter, A.K.M., is quite different. Present in the record are the following undisputed facts which demonstrate that appellee did not meet its burden in terminating appellant's parental rights in A.K.M. pursuant to Secs. 2511(a)(2) and (a)(5).[3]

Despite appellant's frequent moves and emotional crises following the birth of A.K.M., this child remained with appellant for twenty-two months until she was placed in the home of her maternal grandparents. A.K.M. remained there for four years before she was removed to a foster home. Unlike S.M.C., A.K.M. developed a deep relationship with appellant and her family. Since January of 1984, appellant has exhibited signs of maturity and stability and has become more involved in caring for A.K.M. on a daily basis. For instance, she would feed, clothe, clean, and discipline the child, prepare her for school, and take an interest in her development and studies. Nevertheless, I am disheartened in learning that while appellant limited her relationship to one man, her participation in parenting classes, GED courses, and mental health counseling, although improved, was remiss and inconsistent. Yet despite an imperfect attendance record, I note sufficient interest to demonstrate that appellant's situation is remediable.

In addition, I find that A.K.M. was never without essential parental care, as required for termination under Sec. 2511(a)(2). The Pennsylvania Supreme Court in *In re Adoption of R.W.B.*, 485 Pa. 168, 176, 401 A.2d 347, 351 (1979), held that a parent may fulfill his or her responsibility for parental duties by making reasonable arrangements for the temporary care of a child when the parent's inability to care for the child resulted from the parent's personal crisis.

After a careful and studied review of the record in light of the statutory requirements under 23 Pa.C.S.A. Sec. 2511,

---

**3.** It is well established that a decision to terminate parental rights should be based on a current and future inability to care for a child and not on a parent's past performance. *Matter of Adoption of Ferrante*, 334 Pa.Super. 53, 67, 482 A.2d 1076, 1084 (1984).

I find that it would be unconscionable to permanently sever the appellant's natural ties with her daughter, A.K.M., since appellee failed to show by clear and convincing evidence that appellant's parental rights should be terminated pursuant to 23 Pa.C.S.A. Secs. 2511(a)(2) and (a)(5).[4] Although appellant has not been an ideal mother, I have reason to believe that a positive nurturing parent-child relationship exists. In this case, the parens patriae interest favors preservation, not severance, of natural familial bonds. *Santosky v. Kramer*, 455 U.S. at 766–767, 102 S.Ct. at 1402, 71 L.Ed.2d at 615.

Although my colleagues did not address the remaining issues raised by appellant since they decided to reverse the lower court decision with respect to both children, I will address the merits of these claims, since in one instance I have decided to affirm the lower court.

Appellant argues that the lower court improperly considered the best interests of the children in terminating appellant's parental rights. I disagree. The legislative directive and statutory language under 23 Pa.C.S.A. Sec. 2511(b) indicates that the judiciary, when faced with a termination decision, "shall give primary consideration to the needs and welfare of the child."[5] Based on my review of the trial court opinion, I find the appellant's contention is without merit.

Lastly, appellant argues that the trial court failed to acknowledge the interference caused by Children's Services in appellant's relationship with her children. I find no merit in this argument. While Children's Services was involved in appellant's familial relationship, it is noteworthy that a six-month period of separation as ordered by "the court or

4. It is noteworthy that the decision reversing termination is made without prejudice. Thus, if Children's Services finds it necessary in the future, it may initiate termination proceedings against appellant.

5. While this Court has acknowledged a difference between the "needs and welfare" terminology and "best interests" standard in *In re Adoption of Michael J.C.*, 326 Pa.Super. 143, 473 A.2d 1021 (1984), the Pennsylvania Supreme Court, on review, did not address the distinction drawn by the Superior Court. *See* 506 Pa. 517, 486 A.2d 371 (1984).

under a voluntary agreement with an agency," must precede a termination order pursuant to Sec. 2511(a) of the Act. I sympathize with the appellant and acknowledge her increased burden, but it is impossible to preempt agency involvement, especially when a child has been adjudicated dependent and placed under foster care.